**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CITIZENS COAL COUNCIL, | ) | |
| | ) | Civil Action No. 13 - 896 |
| Plaintiff, | ) | |
| | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | ECF No. 24 |
| MATT CANESTRALE | ) | |
| CONTRACTING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Pending before the court is a motion filed by plaintiff requesting a protective order confirming that certain communications are subject to attorney- client privilege and further requesting that the subsequent sharing of those communications with others did not waive the privilege. In conjunction with this motion, plaintiffs have provided the court with unredacted documents identified by the defendant for *in camera* review[1], along with a summary of the documents and relevant background information. The issues have been fully briefed by both parties.

Attached to this Order is a document chart in which the court refers to each document and indicates its ruling thereon. It is the court's hope that the parties will apply these rulings to the remaining documents for which privilege has been asserted and is being disputed. In making its decision as to each of the documents, the court has applied the following standards.

The Attorney-Client Privilege attaches in the following circumstances:

1. The asserted holder of the privilege is or sought to become a client.

---

[1] The court was advised that there are a large number of documents in question. The grouping provided was intended to be a representative sample.

2. The person to whom the communication was made is either a member of the bar of a court or his or her subordinate.

3. The person to whom the communication was made is acting as a lawyer in connection with the communication in question.

4. The communication relates to a fact of which the attorney was informed by the client, without the presence of strangers, for the purpose of securing primarily either an opinion of law or legal services or assistance in some legal proceeding (and not for the purpose of committing a crime or tort). And

5. the privilege has been claimed and not waived by the client.

*Rhone-Poulenc Rorer, Inc. v. Home Indem.*, 32 F.3d 851, 862 (3d Cir. 1994).

There is a specific issue raised with respect to the capacity in which certain communicators were acting; in particular, Lisa Graves Marucci, who is a grass roots organizer for the Environmental Integrity Project ("EIP") who also provides litigation support. In addressing this the court will consider whether Ms. Marucci was acting in her capacity as an organizer or as a subordinate/representative of a lawyer and if the communication was for the purpose of securing legal services or advice or providing assistance in a legal proceeding as set forth above.

There is also an issue regarding Lisa Widawsky-Hallowell, an attorney with EIP who is not counsel of record in this case.[2] Plaintiff argues that EIP was providing legal advice to it and to concerned citizens even before the case was filed. Defendants argue that EIP was acting as an environmental advocacy group and not as legal counsel. They further argue that Plaintiff did not engage EIP as legal counsel until June 24, 2013 and attach an agreement evidencing same.

---

[2] The Environmental Integrity Project is listed as counsel of record via attorney Alayne Gobielle.

Plaintiff provided some evidence that it argues shows that Hallowell was acting as counsel to certain citizens(Kuklish, Nichols, Redman, and Harvey)[3]. Specifically a letter from Hallowell to the Pennsylvania Department of Environmental Protection stating that the letter is written on behalf of EIP and citizens living near the LaBelle Coal Refuse site, requesting an inspection. In the opinion of the court a letter requesting an inspection on behalf of the EIP and concerned citizens does not carry the argument that Hallowell was acting as an attorney for these citizens. She is acting, at best, as an attorney for EIP and, at worst, as an environmental advocate. The Hallowell affidavit (ECF No. 36-3) states that she, with the help of Marucci, met with residents to "develop a potential enforcement case." Again, while these residents may have been helping with the case they were not necessarily clients. CCC was a client but it is again not clear that the residents were acting as agents of CCC. Yes, they had similar interests, but that does not mean they had an attorney client relationship that warranted protection.

There is also an issue raised as to waiver of the privilege by including other concerned citizens on emails, i.e. in the "presence of a stranger." It is horn book law that the privilege does not attach if the statements are made in the presence of third parties. 1 Edna Selan Epstein, *The Attorney-Client Privilege and the Work Product Doctrine* 261(5th ed. 2007). Plaintiff argues that all persons copied on or included in emails were clients or potential clients of EIP and asserts the "co-client privilege". The co-client privilege is invoked when two or more individuals who are represented, or seek to be represented, by the same attorney share a common legal interest and are jointly communicating with a lawyer or discussing or conveying a lawyer's advice amongst themselves. (ECF No. 25, p. 3, citing *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 362-63 (3d Cir. 2007)).

---

[3] Neither Ulery or Yma Smith are mentioned.

Most of the emails involve Gary Kuklish, who became a member of Citizens Coal Council ("CCC") only after 2/27/13 , whom Plaintiffs argue is a client and Defendants argue is simply a local resident of LaBelle. To further complicate matters there are often other local, albeit interested, residents copied on the emails. Plaintiffs aver they are clients of the EIP attorneys or representatives to whom the emails are directed or from. This is not clear from the communications. Plaintiffs have not provided any agreements between these citizens and counsel or even EIP. It has not provided agreements showing that these persons have joined as representative plaintiffs in this lawsuit. These persons are identified as "standing witnesses." The court is not aware of any law that extends the privilege to witnesses. This makes the assertion of the privilege very tenuous. We must keep in mind that the purpose of the privilege is to encourage full and frank communications between attorneys and their clients, (*Upjohn Co. v. U.S.*,449 U.S. 383, 389 (1981)) and not to prevent or thwart discovery. ("Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse v. Republic of the Phillipines,* 951 F.2d 1414 (3d Cir. 1991) citing *In re Grand Jury Investigation* , 599 F.2d 1224, 1235 (3d Cir. 1979). In addition, it is essential that the communications concern legal assistance and advice or they are not privileged.

The parties agree that, once the concerned citizens became members of CCC and agreed to join in its efforts in the lawsuit, then they became clients and could invoke the privilege for certain, otherwise qualified, communications. The dispute concerns when that relationship began. For the most part, the court finds that the communications would not be protected pre-CCC membership unless they specifically indicate that the person is considering becoming a plaintiff and is seeking advice for that purpose.

Finally, as plaintiff is asserting the privilege the burden of proof rests with it. *In re Grand Jury,* 211 F.Supp. 2d 555, 557 (M.D. Pa. 2001) (citing *United States v. Schwimmer,* 892 F.2d 237, 244 (2d Cir. 1989)). The decisions as to each document as set forth on the attached Document Chart are made in accordance with these prerequisites. An Order will follow.

Dated: April 3, 2014

Lisa Pupo Lenihan
Chief U.S. Magistrate Judge