## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CITIZENS COAL COUNCIL,  )
          ) Civil Action No. 13 - 896
     Plaintiff, )
          ) Chief Magistrate Judge Lisa Pupo Lenihan
    v.     )
          )  ECF No. 27
MATT CANESTRALE   )
CONTRACTING, INC.,   )
          )
     Defendant. )

## OPINION

LENIHAN, Chief M.J.

  Currently pending before the Court for disposition is the Motion to Dismiss filed by Defendant, Matt Canestrale Contracting, Inc. ("MCC"), pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction (ECF No. 27). Plaintiff, Citizens Coal Council ("CCC"), brought this action under the citizen suit provision of the Resource Conservation and Recovery Act, 42 U.S.C. §6972(a)(1)(B) ("RCRA"), to abate an imminent and substantial endangerment to health or the environment allegedly caused by solid waste located on the LaBelle Coal Refuse Disposal Area (the "Site"), currently owned and operated by MCC. Plaintiff also asserts violations of various Pennsylvania statutes by MCC. For the reasons that follow, the Court will deny Defendant's motion to dismiss.

## I.  LEGAL STANDARD – MOTION TO DISMISS

### A.  Rule 12(b)(1)

  As a preliminary matter, CCC disputes that the motion to dismiss is properly brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rather, CCC argues that the

motion to dismiss should have been brought pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  In support, CCC submits that when the statute provides the basis for both subject matter jurisdiction and a plaintiff's substantive claim for relief, as in the case at bar, a motion to dismiss under Rule 12(b)(1) is proper only when the allegations of the complaint are frivolous, citing *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1040 (9th Cir. 2004), and *Thornhill Publishing Co. v. Gen. Tel. Co.,* 594 F.2d 730, 734 (9th Cir. 1979).  CCC contends that its allegations that coal refuse and coal ash are solid wastes as defined by Section 1004(27) of the RCRA, 42 U.S.C. §6903(27), are clearly not frivolous, and thus, the motion to dismiss should be reviewed under the *Twombly/Iqbal* standard for Rule 12(b)(6) motions.

In response, MCC argues that Plaintiff's reliance on *Safe Air* is misplaced, as the U.S. Court of Appeals for the Third Circuit has specifically rejected the approach followed by the Ninth Circuit.  Def.'s Reply in Supp. of Mot. to Dismiss at 2, ECF No. 41.  In support, MCC relies on *S.R.P. ex rel. Abunabba v. United States,* 676 F.3d 329, 344 n. 7 (3d Cir. 2012). However, *S.R.P.* is factually distinguishable from the case at bar, and therefore, not dispositive.

In *S.R.P.*, the court of appeals considered whether the government's motion to dismiss plaintiff's claim under the Federal Tort Claims Act ("FTCA"), was properly brought pursuant to Rule 12(b)(1) as a challenge to the court's subject matter jurisdiction, as opposed to a challenge on the merits.  The district court dismissed the case on the basis that the discretionary function exception to the FTCA deprived it of jurisdiction and thus immunized the Government from suit.[1]  In affirming the district court's dismissal of the case under Rule 12(b)(1), the court of

---

[1] The FTCA is a "partial abrogation" of the United States' immunity from suit, and thus, Congress "impose[d] a significant limitation" on when the Government may be sued under the FTCA in 28 U.S.C. §2680(a), which states, inter alia, that 28 U.S.C. §1346(b) (conferring exclusive jurisdiction on the United States district courts for claims for money damages against

appeals opined that overlapping issues of proof existed, "causing the jurisdictional challenge to be 'intertwined with the merits[,]' . . . because many of the same facts that are relevant to the question of whether the discretionary function exception applies are also relevant to the merits question . . .." *Id.* at 344. In reaching this conclusion, the court of appeals noted that its sister courts of appeals for the Fifth and Eleventh Circuits disagreed with its approach to cases where the jurisdiction issue is intertwined with the merits, *id.* at 344 n. 7, however, neither of those cases involved a claim brought under the RCRA.

In the case at bar, the Defendant is a corporation,[2] not the United States government, and therefore, the Court is not concerned here with ensuring that the conditions for waiving immunity have been met as a prerequisite to bringing suit in the first instance. Moreover, the language of the RCRA is clear—"[t]he district court shall have jurisdiction [over citizen suits brought] . . . to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in [42 U.S.C. §6972(a)](1)(B)." 42 U.S.C. §6972(a). *See also Raritan Baykeeper v. NL Indus., Inc.,* 660 F.3d 686, 690-01 (3d Cir. 2011) (holding it was undisputed that district court had jurisdiction over RCRA claims as none of the enumerated exceptions to bringing an

---

the United States for injury to property or person due to the negligent or wrongful act or omission by government employee acting within the scope of his or her employment), does not apply to a claim based upon a government employee's performance or failure to perform a discretionary function or duty. *S.R.P.,* 676 F.3d at 332 (quoting *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir. 1997)) (internal quotation marks omitted); *see also* 28 U.S.C. §2860(a).

[2] *See* Pl.'s First Am. Compl. ¶26, ECF No. 26; Def.'s Ans. to First Am. Compl. at ¶26, ECF No. 55.

ISE citizen suit[3] in 42 U.S.C. §6972(b) applied); *Adkins v. VIM Recycling, Inc.,* 644 F.3d 483, 492 (7th Cir. 2011) (finding that plaintiffs alleged colorable claims for relief directly under the RCRA and even if unsuccessful, they were sufficiently substantial to give the district court subject matter jurisdiction over the case). The reiteration of part of Section 6972(a)(1)(B) in the paragraph conferring jurisdiction upon the federal district courts is just that—a reiteration—not a condition precedent to the district court exercising subject matter jurisdiction. As the Amended Complaint on its face alleges a violation of a federal statute—the RCRA—this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331. Accordingly, the Court will review MCC's motion to dismiss under the Rule 12(b)(6) pleading standard.

**B.      Rule (12)(b)(6)**

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler,* 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 117–18 (3d Cir.2013).

_____

[3] Similarly here, the Amended Complaint sets forth sufficient facts to show that the limitations in Section 6972(b)(2)(A), (B) & (C) on brining an ISE citizen suit do not apply. Am. Compl. at ¶¶ 14 & 16. MCC does not contend otherwise.

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

MCC has attached a number of exhibits to its motion to dismiss because it has brought the motion under Rule 12(b)(1) claiming a factual attack to subject matter jurisdiction. However, because this Court has determined that the motion to dismiss must be analyzed under the Rule 12(b)(6) standard, the Court will consider only the allegations of the Amended Complaint, its attached exhibits, and matters of public record in deciding the motion to dismiss. *Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the amended complaint may also be weighed if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). This Court may consult those documents without converting the motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In deciding a motion to dismiss under Rule 12(b)(6), the Court assumes that the following facts alleged in Plaintiff's First Amended Complaint (ECF No. 26) (hereinafter "Amended Complaint") are true.[4] CCC "is a Pennsylvania corporation that advocates for the

---

[4] On February 26, 2014, CCC filed its First Amended Complaint (ECF No. 26) pursuant to this Court's order dated February 13, 2014 (ECF No. 22), wherein the only change made was in paragraph 18 with regard to the number of members who live or work within a mile of the Site—the Amended Complaint alleges that 26 of its members are so situated, while the original Complaint alleged that 49 members were so situated. *Compare* Am. Compl. ¶18, ECF No. 26 at 4, *with* Compl. ¶18, ECF No. 1 at 4. Because the Amended Complaint and original Complaint do not differ in any other way, the Court will treat the motion to dismiss as filed in response to the Amended Complaint, even though the motion to dismiss was filed on the same day as the Amended Complaint. Subsequently, MCC filed its Answer to the First Amended Complaint (ECF No. 55) on May 12, 2014.

abatement of pollution from mines, . . . and challenging and changing the practices of the coal industry to protect both people and the environment." Am. Compl. ¶17. MCC owns and operates the LaBelle Refuse Site (the "Site"), a historic mine dump, located in Luzerne Township, Fayette County, Pennsylvania, which "consists of an abandoned coal refuse pile made up of approximately 40 million tons of waste, two coal slurry ponds, and millions of cubic yards of coal combustion waste (coal ash) piled tens of feet deep on top of the coal refuse[.]" *Id.* at ¶¶2-3. In paragraph 4 of its Amended Complaint, CCC alleges:

> Coal refuse is acidic and contains high levels of environmentally toxic metals like iron and manganese. Coal ash waste is generally alkaline and contains high levels of environmentally toxic heavy metals such as arsenic, boron, lead, selenium, and hexavalent chromium. Water that contacts with coal refuse and coal ash waste creates leachate that enters ground or surface waters threatens the health of local communities, makes groundwater unsafe to drink, harms aquatic and other wildlife, and pollutes rivers and streams. Leachate from both types of waste also causes high levels of salts in water, which is harmful to aquatic and other wildlife and freshwater streams.

Am. Compl. ¶4.

According to CCC, MCC's operation uses coal ash waste from power plants to reclaim and fill the Site and treat the underlying coal refuse pile. *Id.* at ¶6. Drainage seeping from the Site at several locations is flowing to Pennsylvania waters without a permit, which has caused and continues to cause pollution in the four streams close to the Site. *Id.* at ¶¶7-8. The pollution of surface waters caused by the Site exceeds levels at which scientific studies have found harm to aquatic life, and as such, may present an imminent and substantial endangerment to the environment in violation of the RCRA. *Id.* at ¶9.

Twenty-six (26) of CCC's members live or work within a mile of the Site, but refrain from hunting, fishing, or engaging in other recreation on and along the Monongahela River and

its tributaries near the Site in the LaBelle area because of pollution from the Site. *Id.* at ¶18. CCC contends that these members are adversely affected by the ground and surface water discharges, fugitive dust emissions, and failure to comply with permit conditions. *Id.* at ¶19. Specifically, CCC alleges that its members used to hunt deer near the Site and fish in the Monongahela River close to where the polluted streams near the Site flow into the river, but no longer do so because they are concerned that the deer and fish are contaminated with pollution from the Site. *Id.* at ¶¶19-20. Some of CCC's members also used the streams near the Site for various other purposes, such as bait storage, but no longer do so because the streams are too polluted. *Id.* at ¶20. Two of the streams have a visible iron color, which the members find aesthetically displeasing. *Id.* In addition, CCC members have repeatedly experienced fugitive coal ash pollution on their homes, cars and other property from uncovered trucks hauling coal ash and have been exposed to more dust when driving state road 4022 where trucks cross from the terminal area to the Site. *Id.* at ¶21.

CCC further alleges that MCC has contributed to the handling of the underlying coal refuse by undertaking activities that directly move the waste, such as re-grading, and has contributed to the handling of the waste in slurry pond 3 by dewatering the impoundment and buttressing the refuse. *Id.* at ¶37. CCC avers that MCC is currently transporting, handling, and disposing of coal ash wastes from two other power plants and has been engaged in similar activities for over ten years. *Id.* at ¶38. To the extent that the coal ash waste comes into contact with the coal refuse, CCC contends that it serves to neutralize the acidic refuse and the acidic leachate coming from the coal refuse, which is a form of treatment. *Id.* at ¶40. However, according to CCC, coal ash waste does not treat or neutralize the effects of heavy metals and other toxic substances entrained in coal refuse waste, but rather, adds pollution, and can alter the

"in situ geochemistry significantly and create conditions that allow for the dissolution and discharge of toxic material that were previously immobile." *Id.* at ¶41. As a result of MCC's operations, polluted mine drainage is discharged without authorization to waters of the Commonwealth that cause water pollution in violation of the RCRA and the Pennsylvania state laws enacted to protect aquatic ecosystems. *Id.* at ¶42.

On June 26, 2013, CCC filed the instant lawsuit setting forth alleged violations of the RCRA and various Pennsylvania state laws, predicating subject matter jurisdiction on 42 U.S.C. §6972(a)(1)(B), 42 U.S.C. §7604(a)(1) & (f)(4), and 28 U.S.C. §§1331 & 1367. (Am. Compl. ¶12.) At issue here is Count I of the Amended Complaint, which asserts a claim for violations of Section 7002(a)(1)(B) of the RCRA, 42 U.S.C. §6972(a)(1)(B), and seeks injunctive relief requiring MCC to abate the endangerment. *See* Am. Compl. ¶¶73-76.[5] The parties have conducted discovery, which ended on May 9, 2014. Prior to the close of discovery, on February 26, 2014, MCC filed a motion to dismiss (ECF No. 27) pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that this Court lacks subject matter jurisdiction over this action, which, as noted above, the Court is treating as a motion to dismiss under Rule 12(b)(6).[6] The motion has been fully briefed and responded to, and thus, is ripe for disposition.

## III. ANALYSIS

"RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 483

---

[5] The claims asserted by CCC in Counts 2-4 are based on alleged violations of the Pennsylvania Clean Streams Law, 35 Pa. Cons. Stat. §§691.301 *et seq.,* the Pennsylvania Air Pollution Control Act, 35 Pa. Cons. Stat. §§ 4008, 4013.6(c), and the Pennsylvania Surface Mining Conservation and Reclamation Act, 52 Pa. Cons. Stat. §§1396.18c(a). *See* Counts 2 -4, Am. Compl., ¶¶76-84.

[6] Also, on February 26, 2014, CCC filed an Amended Complaint (ECF No. 26) pursuant to this Court's order dated February 13, 2014 (ECF No. 22). *See* Note 3, *supra.*

(1996) (citing *Chicago v. Envtl. Defense Fund*, 511 U.S. 328, 331-32 (1994)).  The overriding concern of Congress in enacting the RCRA in 1976 "'was to establish the framework for a national system to insure the safe management of hazardous waste.'"  *Safe Air for Everyone,* 373 F.3d at 1040-41 (quoting *Am. Mining Cong. v. U.S. EPA,* 824 F.2d 1177, 1179 (D.C. Cir. 1987)).  In addition, "Congress expressed concern over 'the 'rising tide' in scrap, discarded, and waste materials' and 'the need to reduce the amount of waste and unsalvageable materials and to provide for proper and economical solid waste disposal practices.'"  *Id.* at 1041 (quoting *Am. Mining Cong.,* 824 F.2d at 1179 (quoting 42 U.S.C. §§6901(a)(2) and (a)(4))).

The RCRA delineated a bifurcated approach to the regulation of solid waste, which the RCRA defines in pertinent part as "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, . . .."  42 U.S.C. §6903(27).  "[S]ubtitle C [of the RCRA], 42 U.S.C. §§6921-6939e, establishes a 'cradle to grave' federal regulatory system for the treatment, storage, and disposal of hazardous wastes."  *Am. Portland Cement Alliance v. E.P.A.,* 101 F.3d 772, 774 (D.C. Cir. 1996) (citing *Chem. Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 338 n.1 (1992)).  "Hazardous waste" is defined in Section 1004 of the RCRA as "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may—(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."  42 U.S.C. §6903(5).  Thus, hazardous waste is a subset of solid waste.

Subtitle D of the RCRA, 42 U.S.C. §§6941-6949a, regulates the disposal of all other solid wastes that do not qualify for regulation as "hazardous wastes" under Subtitle C. *Envtl. Def. Fund v. U.S. EPA,* 852 F.2d 1309, 1310 (D.C. Cir. 1988). "Under Subtitle D, states use federal financial and technical assistance to develop solid waste management plans in accordance with federal guidelines." *Id.*[7]

Although mining waste was potentially subject to regulation under Subtitle C, information on the potential danger posed by mining was insufficient for Congress to take legislative action, and thus, "Congress included a statutory provision [in the RCRA] directing the EPA to conduct a detailed study of mining wastes to evaluate 'the potential danger to human health and environmental vitality.'" *Id.* (citing H.R.Rep. No. 1491, 94th Cong., 2d Sess. 15 reprinted in 1976, U.S.Code Cong. & Admin.News 6238, 6253; 42 U.S.C. §6982(f)).

Subsequently, Congress passed the Solid Waste Disposal Act of 1980, Pub. L. 96-482, 94 Stat. 2334), adding new sections to the RCRA known as the "Bevill Amendment," which suspended regulation of mining wastes under Subtitle C pending further study by the EPA, and ordered EPA to make a regulatory determination with regard to wastes excluded from Subtitle C regulation.[8] *Envtl. Def. Fund,* 852 F.2d at 1311 (citing RCRA §§3001(b)(3)(A)(ii) & 3001(b)(3)(C), 42 U.S.C. §§6921(b)(3)(A)(ii) & 6921(b)(3)(C)). The EPA published its

---

[7] As MCC correctly notes, Pennsylvania has such a waste management plan in place which has been approved by the EPA. *See* 30 C.F.R. §938.10 (1982).

[8] The Bevill Amendment exempts from regulation as hazardous wastes under Subtitle C of the RCRA, "Fly ash waste, bottom ash waste, slag waste, and flue gas emission control waste generated primarily from the combustion of coal or other fossil fuels[,]" 42 U.S.C. §6921(b)(3)(A)(i), as well as "solid waste from the extraction, beneficiation, and processing ores and minerals, including phosphate rock and overburden from the mining of uranium ore[,]" 42 U.S.C. §6921(b)(3)(A)(ii), until at least six months after the study is submitted and after promulgation of regulations in accordance with EPA's regulatory determination. *Appalachian Voices v. McCarthy,* 989 F.Supp. 2d 30, 39 (D.D.C. 2013) (citing 42 U.S.C. §6921(b)(3)(C)).

regulatory determination on July 3, 1986, in which it announced that it decided not to regulate mining wastes under Subtitle C, but rather, proposed to develop a regulatory program for these wastes under Subtitle D. *Id.* at 1312 (citing 51 Fed. Reg. 24,496 (1986)). As support for its determination, the EPA noted, inter alia, that "some states had 'comprehensive and well-integrated' mining waste regulatory programs already in place. EPA suggested that the Subtitle D option chosen by the agency would take into account state by state variation and avoid duplication of protection in states already well-regulated." *Id.* at 1312-13 (citing 51 Fed. Reg. at 24,499).

The EPA "commenced and completed its Bevill Amendment regulatory determinations in 1993 and 2000 pursuant to a consent decree after various groups brought suit to force the EPA to comply with the [Bevill] Amendment's requirements." *Appalachian Voices,* 989 F.Supp. 2d at 39 (citing 65 Fed. Reg. 32,214-01, 32,235 (May 22, 2000)). "The EPA concluded that regulation of coal ash as hazardous waste under Subtitle C was inappropriate, but indicated in both the 1993 and 2000 determination that it would continue to assess whether increased regulation of coal ash under Subtitle D is appropriate." *Id.* (citing 58 Fed. Reg. 42,466-01, 42,466 (Aug. 9, 1993); 65 Fed. Reg. at 32,214). No further action was taken by the EPA to regulate coal ash under either Subtitle C or D until June 21, 2010, at which time it disclosed that it was considering two options which would increase the regulation of coal ash—one would subject such waste to regulation under Subtitle C and the other would regulate disposal of coal ash under Subtitle D by issuing national minimum criteria—but neither proposal would change the 2000 regulatory determination for CCBs which are exempt from Subtitle C regulations. *Id.* at 39-40 (citing 75 Fed. Reg. 35,128-01, 35,128 (June 21, 2010)).

To date, the EPA has yet to make a determination as to whether it will promulgate regulations for coal ash under Subtitle D. Recently, however, in *Appalachian Voices,* in which the plaintiffs instituted suit to force the EPA to determine whether or not it would promulgate regulations for coal ash under Subtitle D,[9] the EPA committed to sign for publication in the Federal Register a notice taking final action regarding its proposed revision of RCRA Subtitle D regulations pertaining to coal combustion residuals by December 19, 2014. *See* Consent Decree at ¶4, ECF No. 49 at 5, entered on May 2, 2014 in *Appalachian Voices, et al. v. McCarthy,* Case No. 1:12-cv-0523-RBW (D.D.C.). Thus, currently, the EPA is not regulating coal ash under either Subtitle C or D of the RCRA.

In addition to regulating solid and hazardous waste, the RCRA authorizes two types of citizen suits in Section 7002(a)(1), 42 U.S.C. §6972(a)(1) against parties other than the EPA.[10] The first type allows any person to bring a civil action to enforce a "violation of any permit, standard, regulation, condition, requirement, prohibition, or order which [became] effective pursuant to [the RCRA.]" 42 U.S.C. §6972(a)(1)(A) (hereinafter referred to as a "violation enforcement citizen suit"). The second type of citizen suit authorizes any person to sue any person "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment[.]" 42 U.S.C.

---

[9] The complaint in *Appalachian Voices* was brought pursuant to 42 U.S.C. §6972(a)(2), a different citizen suit provision of the RCRA than the one asserted by CCC here. *Appalachian Voices,* 989 F.Supp. 2d at 40. Section 6972(a)(2) allows any person to bring a civil action against the Administrator of the EPA where the Administrator allegedly fails to perform any nondiscretionary act or duty under the RCRA.

[10] The RCRA also allows a citizens suit against the Administrator of the EPA to force the Administrator to perform a nondiscretionary act or duty under the RCRA which the Administrator has allegedly failed to perform. 42 U.S.C. §6972(a)(2).

§6972(a)(1)(B) (hereinafter referred to as an "ISE citizen suit").  In the instant matter, CCC has asserted a RCRA claim based on the ISE citizen suit provision.

To succeed on its RCRA claim under the ISE citizen suit provision, CCC must establish that MCC, the present owner/operator of the Site:

> (1) . . . was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) . . . has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and (3) that the solid or hazardous waste may present an imminent and substantial endangerment to health or the environment.

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 399 F.3d 248, 259 (3d Cir. 2005 (quoting *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1014-15 (11th Cir. 2004) (quoting *Cox v. City of Dallas,* 256 F.3d 281, 292 (5th Cir. 2001); 42 U.S.C. §6972(a)(1)(B))).  *See also Safe Air for Everyone,* 373 F.3d at 1041.  MCC has moved to dismiss this action largely on the premise that coal combustion byproducts ("CCB")[11] and coal refuse are neither hazardous wastes regulated under Subtitle C of the RCRA, nor solid wastes regulated under Subtitle D of the RCRA, and therefore, no factual predicate exists for Plaintiff's RCRA claim.  Viewing MCC's motion to dismiss under the *Twombly* standard, the issue presented here is whether, as a matter of law, the coal ash and coal refuse materials on the Site are solid waste as defined by the RCRA.  MCC advances several arguments in support of its motion to dismiss, which the Court will consider in turn.

---

[11] Coal combustion byproducts or "CCB" are referred to as "fly ash waste, bottom ash waste, slag waste, and flue gas emission control waste" in the exclusion from hazardous waste under the Bevill Amendment to the RCRA.  42 U.S.C. §6921(b)(3)(A)(i).

## A.      Whether CCB and Coal Refuse are Subject to Regulation as Hazardous Waste under RCRA Subtitle C

In support of its motion to dismiss, MCC initially argues that CCB and coal refuse are not hazardous wastes under Subtitle C of the RCRA.  In support, MCC submits that under the 1980 Bevill Amendment to the RCRA, neither coal ash nor materials from processing minerals were to be considered hazardous waste under Subtitle C.  MCC maintains that both CCB and coal refuse "from the extraction, beneficiation, and processing of ores and minerals" are specifically exempted from regulation under RCRA Subtitle C, and therefore, may not be considered under Subtitle C of the RCRA as hazardous waste, despite CCC's characterization of the Site as a "mound of toxic waste."

CCC argues in response that the RCRA sets forth two different definitions of solid waste, depending on whether the plaintiff is suing for violations of RCRA's regulatory program or for violations of the ISE provision.  According to CCC, for violations of RCRA's regulatory programs, solid waste is defined by EPA regulations (Pl.'s Br. in Opp'n at 2, citing 40 C.F.R. §261.1(a)), while for violations of the ISE provision, solid waste is defined solely by reference to the statutory definition in 42 U.S.C. §6903(27) (*id.*, citing 40 C.F.R. §261.1(b)(2)(ii)). Moreover, CCC argues that jurisprudence from other courts of appeals clearly establishes that the statutory definition of solid waste contained in 42 U.S.C. §6903(27) applies to an ISE citizen suit brought to abate an imminent hazard to health or the environment, citing in support, *Cordiano v. Metacon Gun Club, Inc.,* 575 F.3d 199, 206 (2d Cir. 2009).[12]

---

[12] In the other case cited by CCC, *Owen Elec. Steel Co. of S.C., Inc. v. Browner*, 37 F.3d 146 (4th Cir. 1994), the court determined that the statutory definition of solid waste (as opposed to the regulatory definition) should be applied to determine whether a slag processing area was correctly identified in an EPA issued permit as a solid waste management unit. *Id.* at 148 & n. 3. Unlike the case at bar, *Owen Electric Steel Co.* did not involve an ISE citizen suit.

As a preliminary matter, the Court agrees with MCC that mining wastes appear to be exempt from regulation under Subtitle C of the RCRA. However, MCC's argument misses the mark, as CCC is not bringing a citizen suit for alleged violations of RCRA Subtitle C regulations under Section 6972(a)(1)(A), but rather, is bringing a citizen suit under Section 6972(a)(1)(B) to abate an imminent and substantial endangerment allegedly caused by the CCB and coal refuse on the Site.

The Court agrees with CCC that the statutory definition under §6903(27) determines whether CCB and coal refuse are solid waste for purposes of an ISE citizen suit. The RCRA is silent as to which definition of solid waste applies to ISE citizen suits, and the U.S. Court of Appeals for the Third Circuit has not spoken on this issue. However, several other courts of appeals have addressed it and held that the statutory definition of solid waste in §6903(27) applies to ISE citizen suits to determine if the materials at issue constitute "solid waste." *Cordiano,* 575 F.3d at 206 (Second Circuit holding plaintiff's imminent and substantial endangerment claim was governed by the broader statutory definition of solid waste in §6903(27)); *Conn. Coastal Fisherman's Ass'n v. Remington Arms Co.,* 989 F.2d 1305, 1314-15 (2d Cir. 1993) (noting that the regulations provide that the statutory definition of solid waste in §6903(27) applied to "imminent hazard" lawsuits brought by the United States under §7003, 42 U.S.C. §6973, and because §7002(a)(1)(B), 42 U.S.C. §6972(a)(1)(B), was nearly identical to §7003, the broader statutory definition of solid waste applied to ISE citizen suit). *See also Safe Air for Everyone,* 373 F.3d at 1041 (Ninth Circuit applying statutory definition of solid waste under §6903(27) in an ISE citizen suit under RCRA to determine whether Kentucky blue grass residue was "solid waste"); *Comite Pro Rescate de la Salud v. Puerto Rico Aqueduct & Sewer Auth.,* 888 F.2d 180, 186-87 (1st Cir. 1989) (finding that §§7002 and 7003 of the RCRA are not

part of Subtitle C and therefore the definition contained in the regulations under Subtitle C did not apply in construing domestic sewage exception in §6903(27) definition of "solid waste" in an ISE citizen suit).  The Editor-in-Chief of the ENVIRONMENTAL LAW REPORTER also concludes that the broader statutory definition of solid waste applies to ISE citizen suits.  Adam Babich, *RCRA Imminent Hazard Authority:  A Powerful Tool for Businesses, Governments, & Citizen Enforcers,* 24 ENVTL. L. REP. 10122, 10124 (1994) ("the statutory definitions [of solid and hazardous waste] apply with independent force to a variety of situations, including RCRA imminent hazard actions under §7002(a)(1)(B)").

As noted by the court of appeals in *Cordiano*, the language in 42 U.S.C. §6973 governing suit by the United States to abate imminent and substantial endangerment to the environment and health is nearly identical to the language in the ISE citizen suit provision in Section 6972(a)(1)(B). *Cordiano*, 575 F.3d at 206; *Conn. Coastal*, 989 F.2d at 1315.  Moreover, as noted by the Second Circuit, 40 C.F.R. §261.1(b)(2)(ii) provides that the statutory definition of solid waste in 42 U.S.C. §6903(27) applies to "imminent hazard" lawsuits brought by the United States under  Section 6973.  Therefore, the Second Circuit reasoned that inasmuch as the two sections were nearly identical, the broader statutory definition of solid waste in §6903(27) should be applied to ISE citizen suits.  *Cordiano,* 575 F.3d at 205-06; *Conn. Coastal*, 989 F.d at 1314-15.  Significantly, a negative inference cannot be drawn from the regulation's failure to provide that the statutory definition in Section 6903(27) applies to imminent hazard citizen suits under §6972(a)(1)(B), as Congress had not yet enacted Section 6972(a)(1)(B) at the time the regulation was promulgated, *Comite Pro Rescate de la Salud*, 888 F.2d at 187.

This Court finds the reasoning of the above authority persuasive and concludes that the court of appeals for this circuit would likely find that the definition of solid waste contained in

Section 6903(27) applies to determine whether CCB and coal refuse are solid waste in an ISE citizen suit. Therefore, even though CCB and coal refuse are exempt from regulation under Subtitle C, that simply has no bearing on whether CCB and coal refuse constitute "solid waste" for purposes of an ISE citizen suit.

**B.**     **Whether State Regulation of CCB and Coal Refuse Preclude CCC from Bringing an ISE Citizen Suit Under the RCRA**

Next, MCC argues that the CCB and coal refuse are not regulated by RCRA Subtitle D, but rather, are regulated by the Pennsylvania Department of Environmental Protection ("PA DEP"). MCC's argument is premised on the theory that the EPA has declined to promulgate regulatory guidance regarding CCB, and under the consent decree approved in *Appalachian Voices v. McCarthy,* the EPA committed to determine whether or not it would promulgate regulations for CCB under RCRA Subtitle D by December 2014, thus indicating that the EPA currently does not regulate CCB under the RCRA. Moreover, MCC contends that solid waste disposal provisions of RCRA Subtitle D contemplate that states will assume significant program and enforcement authority and, in fact, Pennsylvania has established a program for regulating non-hazardous solid wastes under Subtitle D, which has been approved by the EPA and the U.S. Department of Interior.

Specifically, with regard to CCB, MCC argues that under Pennsylvania's waste management regulations, specifically 25 Pa. Code §287.7(a), any material that is "beneficially used under the permit ceases to be a waste[,]" and because DEP has approved beneficial use certification of CCB for the Site, it is not a waste and therefore, is not subject to RCRA liability. With regard to coal refuse, MCC submits that coal refuse is subject to regulation under the Pennsylvania Surface Mining Conservation and Reclamation Act ("PA SMCRA"), 52 P.S.

§1396.1 *et seq.*, the Pennsylvania Coal Refuse Disposal Control Act, 52 P.S. §30.51, *et seq.*, and the implementing regulations promulgated under those two statutes. In support, MCC cites the U.S. Department of the Interior's approval of Pennsylvania's regulatory program to implement the federal Surface Mining Control and Reclamation Act of 1977 ("federal SMCRA"), 30 U.S.C. §1201 *et seq., see* 30 C.F.R. §938.10, and the RCRA's recognition of state regulation of coal refuse in 42 U.S.C. §6905(c)(2). Pl.'s Br. at 12. Accordingly, MCC contends that the PA DEP is vested with exclusive jurisdiction to enforce federal SMCRA under its federally-approved program, and thus, exclusively regulates coal refuse in Pennsylvania. MCC further submits that because the coal refuse pile at the Site is permitted under PA SMCRA and the Coal Refuse Disposal Control Act (a factual allegation not contained in the Amended Complaint), the coal refuse pile is not governed by the RCRA, but rather, by DEP's extensive coal mining regulatory program. Thus, according to MCC, where an RCRA solid waste, such as the coal refuse pile, is expressly and adequately covered by the federal SMCRA, the RCRA should avoid duplication of the otherwise permitted and regulated material. In support of this argument, MCC cites *Coon v. Willet Dairy,* No. 5:02-CV-1105, U.S. Dist. LEXIS 51718 (N.D.N.Y. July 17, 2007).

Therefore, MCC submits that because "Pennsylvania has promulgated, and the regulated community has relied upon, standards that govern solid wastes, coal refuse, and the beneficial use of CCB[,] . . . the applicable state regulations govern the CCB and coal refuse pile, not [the] federal RCRA." MCC's Br. at 9 (ECF No. 29). As such, MCC argues that CCB and coal refuse are not RCRA wastes, but are in fact state regulated materials, and therefore, Plaintiff's RCRA claim should be dismissed.

In response, CCC argues that even though CCB and coal refuse are regulated by the PA DEP, that does not preclude it from bringing an ISE citizen suit to abate an imminent harm to

health or the environment allegedly caused by these wastes on the Site. Under the Supremacy Clause of the U.S. Constitution, CCC submits that states cannot restrict the right of ISE RCRA plaintiffs to enforce the federal statutory definition of solid waste. CCC further contends that MCC's focus on regulatory authority is irrelevant because an ISE citizen suit is based on citizen enforcement authority, which is entirely separate from regulatory authority. Pl.'s Br. in Opp'n at 9.

The Court agrees with CCC. The fact that CCB and coal refuse are currently regulated by Pennsylvania does not preclude CCC from bringing an ISE citizen suit under 42 U.S.C. 6972(a)(1)(B), as that right is independent of MCC's compliance or non-compliance with Pennsylvania's regulation of CCB and coal refuse. *See e.g., Craig Lyle Ltd. P'Ship v. Land O'Lakes, Inc.*, 877 F.Supp. 476, 484 (D.Minn. 1995) (holding that an ISE citizen suit based on Section 6972(a)(1)(B) was not superseded by an EPA-authorized state hazardous waste program); *Adkins,* 644 F.3d at 486 (noting that the citizen suit provision exists because "RCRA does not give sole responsibility to federal and state environmental agencies and assume that they will enforce the law adequately."); *Dague v. City of Burlington,* 935 F.2d 1343, 1352-53 (2d Cir. 1991) (holding ISE citizen suit under Section 6972(a)(1)(B), which was more general than a citizens suit under Section 6972(a)(1)(A) and not dependent upon a specific provision in Subtitle C, was not superseded by state's own hazardous waste program), *rev'd in part on other grounds* 505 U.S. 557 (1992); *Clorox Co. v. Chromium Corp.,* 158 F.R.D. 120, 124 (N.D. Ill. 1994) (noting that "courts hold that state regulations do not supersede §6972(a)(1)(B)."); *United States v. Straits Steel & Wire Co.,* No. 1:91-cv-383, 1992 U.S. Dist. LEXIS 21431, at *3-4 (W.D.Mich. Nov. 19, 1992) ("[A] state's own hazardous waste program affects only those actions brought pursuant to [§6972(a)(1)(A)], i.e., those that depend upon the specific permit and notification

requirements in [Subtitle C]. [Section 6972(a)(1)(B)], on the other hand, is more general, and allows a direct cause of action against those whose activities 'may present an imminent and substantial endangerment to health or the environment.' Thus, a [§6972(a)(1)(B)] suit does not depend on any specific [Subtitle C] provision, nor is it superseded by a state program.") (citing *Dague,* 935 F.2d at 1352-53). *See also* 49 Fed. Reg. 48300, 48305 (Dec. 12, 1984) (in notice of final determination on Texas' application to operate a hazardous waste program in lieu of federal program under the RCRA, EPA opined that federal citizen suit provision under Section 7002 of RCRA is available to citizens in states with programs authorized by EPA to regulate hazardous waste).

Moreover, Congress has articulated in clear language those situations where a citizen suit under Section 6972(a)(1)(B) is precluded—where: (A) the plaintiff has failed to provide the required 90-day notice prior to commencing an ISE citizen suit; (B) the EPA has (i) commenced and is diligently prosecuting an action under 42 U.S.C. § 6973 or under Section 106 of CERCLA,[13] (ii) actually engaged in a removal action under Section 104 of CERCLA,[14] (iii) incurred costs to initiate a Remedial Investigation and Feasibility Study (RIFS) under Section 104 of CERCLA and is diligently proceeding with a remedial action thereunder, or (iv) obtained a court order (including a consent decree) or issued an administrative order under Section 106 of CERCLA or Section 6973, pursuant to which the responsible party is diligently conducting a removal action, RIFS, or proceeding with a remedial action; (C) a state has (i) commenced and is diligently pursuing an action under Section 6972(a)(1)(B), (ii) engaged in a removal action under Section 104 of CERCLA, or (iii) incurred costs to initiate a RIFS under Section 104 of

---

[13] Section 106 of CERCLA refers to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §9606.
[14] *Id.* at 42 U.S.C. §9604.

CERCLA and is diligently proceeding with a remedial action under CERCLA; or (D) it is brought by a person (other than a state or local government) to challenge the siting of a hazardous waste treatment, storage, or disposal facility, or to restrain or enjoin the issuance of a permit for such facility. 42 U.S.C. §6972(b)(2)(A), (B), (C), & (D). The existence of a federally approved state waste disposal program is not one of the bases expounded by Congress for precluding an ISE citizen suit. Nor does the Amended Complaint set forth any facts to suggest that any of the clearly articulated situations precluding an ISE citizen suit is present here. Indeed, Plaintiff specifically alleges facts to show that the limitations articulated in subsections (A), (B), and (C) of Section 6972(b)(2) are not present here. Am. Compl., ¶¶ 14, 16.

Finally, it is simply irrelevant whether CCB is considered waste under the Pennsylvania regulations, as this Court has determined that the statutory definition of solid waste contained in Section 1004(27) of the RCRA, 42 U.S.C. §6903(27), applies to an ISE citizen suit.[15] *See* discussion *supra* at 15-16.

MCC's argument as to coal refuse likewise lacks merit, as it is irrelevant whether Pennsylvania has assumed full responsibility for enforcement of the federal SMCRA for coal refuse through its state regulatory program, because CCC's citizen suit is not brought under Section 6972(a)(1)(A) for *violations* of any "permit, standard, regulation, condition, requirement, [or] prohibition" which became effective pursuant to the solid waste disposal provisions of the RCRA. Rather, CCC's RCRA citizen suit is brought under the imminent and substantial endangerment provision in Section 6972(a)(1)(B), which is independent of MCC's compliance

---

[15] MCC's reliance on 25 Pa. Code §287.7, to support its argument that CCB which is beneficially used in accordance with an approved PA DEP permit ceases to be a solid waste, is misplaced. Chapter 287 applies to residual waste *other than coal ash that is beneficially used under Chapter 290 and coal refuse* as defined in the Coal Refuse Disposal Control Act, 52 P.S. §30.51 et seq. *See* Definitions of beneficial use, residual waste, and solid waste, 25 Pa. Code §287.1.

or non-compliance with PA DEP's regulation of coal refuse. As such, Pennsylvania's regulation of coal refuse does not preclude CCC from bringing an ISE citizen suit.

Accordingly, the Court finds that Pennsylvania's regulation of CCB and coal refuse does not preclude CCC's RCRA ISE citizen suit.

C.   **Whether CCB & Coal Refuse Constitute Solid Waste Under 42 U.S.C. §6903(27)**

The remaining issue to be determined is whether the factual allegations in the Amended Complaint plausibly show that the CCB and coal refuse at issue here are solid waste, as that term is defined in 42 U.S.C. §6903(27). Under Section 6903(27), solid waste is defined, in relevant part, as:

> any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility *and other discarded material,* including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, *mining*, and agricultural operations, . . ..

42 U.S.C. §6903(27) (emphasis added). The parties' dispute here centers on whether the CCB and coal refuse are "discarded material." The term "discarded material" is not defined in the RCRA, but courts interpreting the term have looked to the ordinary meaning of the word "discarded" as defined in the dictionary – to "'cast aside; reject; abandon; give up.'" *Safe Air,* 373 F.3d at 1041 (quoting THE NEW SHORTER OXFORD ENGLISH DICTIONARY 684 (4th ed.1993)); *Safe Food & Fertilizer,* 373 F.3d at 1047-48 (dissent) (citation omitted). *See also United States v. Alvarez-Sanchez*, 511 U.S. 350, 357 (1994) (where a term is not defined in a statute, courts "must construe the term in accordance with its ordinary and natural meaning") (citation and internal quotation marks omitted).

In opposing the motion to dismiss, CCC advances several arguments in support of its position that CCB and coal refuse are solid waste under Section 6903(27). Initially, CCC argues that based on the plain language of Section 6903(27), the CCB and coal refuse are solid wastes under the RCRA. For support, CCC relies on *Safe Air* in which the Ninth Circuit, after considering the approach of its sister courts of appeals in the District of Columbia, Second, and Eleventh Circuits, identified three relevant considerations for determining whether a recycled material was "discarded" under the definition of "solid waste" in the RCRA: "(1) whether the material is "destined for beneficial reuse or recycling in a continuous process by the generating industry itself; (2) whether the materials are being actively reused, or whether they merely have the potential of being reused; (3) whether the materials are being reused by its original owner, as opposed to use by a salvager or reclaimer." *Id.* at 1043 (internal citations and quotation marks omitted).

The disputed "discarded" material in *Safe Air* consisted of remnants from the open burning of Kentucky bluegrass residue after harvest, which was reused in a continuous farming process designed to produce Kentucky bluegrass. The court of appeals held that the farmers "presented uncontroverted evidence establishing that: (1) the grass residue is destined for beneficial reuse in a continuous process of growing and harvesting Kentucky bluegrass seeds, the generating industry; (2) the [farmers] reuse grass residue, *inter alia*, to provide nutrients and to act as a fire accelerant for open burning, as opposed to being kept in storage for potential reuse; and (3) the grass residue is being reused by farmers who are its original owners . . . not by a salvager or reclaimer." 373 F.3d at 1046 (internal citations omitted). Based on these

considerations, as well as the legislative history,[16] the court of appeals concluded that the grass residue was not discarded, and therefore, was not solid waste under the RCRA.  *Id.*

CCC argues that applying the *Safe Air* considerations to the facts of this case warrants the conclusion that the coal ash is discarded material. According to CCC, the coal ash is not used by the generating industry, i.e., the power company that burned the coal to generate electricity; the power companies paid MCC to remove the ash from the utility site, so the ash was not being actively reused by its original owner; and MCC is a third party salvager or reclaimer. CCC therefore contends that as discarded material, the coal ash constitutes solid waste under Section 6903(27).

In reply, MCC argues that Plaintiff's reliance on the three-prong test in *Safe Air* is misplaced, based on the District of Columbia Court of Appeals decision in *Safe Food & Fertilizer, supra.* In that case*,* the petitioners/nonprofit organizations sought review of an EPA rule which tightened its Land Disposal Restriction standards and essentially clarified that Subtitle C of the RCRA would not apply to recycled materials used to make zinc fertilizers or to the resulting fertilizers themselves, as long as they met certain handling, storage and reporting conditions and, with regard to the fertilizers themselves, had concentration levels for lead, arsenic, mercury, cadmium, chromium and dioxins that fell below specified thresholds.    The issue before the court of appeals was whether the recycled materials and resulting fertilizers were solid waste—the EPA concluded they were not because they were not "discarded," as the materials satisfied the specified conditions set forth in the rule.  350 F.3d at 1266.    The

---

[16] The House Report noted that "[m]uch industrial and agricultural waste is reclaimed or put to new use and is therefore not a part of the discarded materials disposal problem the committee addresses. . . . .  Agricultural wastes which are returned to the soil as fertilizers or soil conditioners are not considered discarded materials in the sense of this legislation."  H.R. Rep. No. 94-1491, 94th Cong., 2d Sess., at 3 (1976), *reprinted in* 1976 U.S.C.C.A.N 6238, 6240-41.

petitioners challenged the EPA's decision, arguing that the materials in question are "discarded" even though they are recycled in a useful product, relying on previous decisions by the District of Columbia Circuit, which they interpreted to hold that recycled material destined for immediate reuse within an ongoing industrial process is never considered "discarded" while material that is transferred to another firm or industry for subsequent recycling must always be viewed as "discarded." *Id.* at 1268. The court of appeals rejected the petitioners' argument and clarified its holding in previous decisions:

> Petitioners misread our cases. We have held that the term "discarded" cannot encompass materials that "are destined for beneficial reuse or recycling in a continuous process by the generating industry itself." *Am. Mining Cong. v. EPA* ("AMC I"), 824 F.2d 1177, 1186 (D.C.Cir.1987); *see also Ass'n of Battery Recyclers, Inc. v. EPA*, 208 F.3d 1047, 1056 (D.C.Cir.2000). We have also held that materials destined for future recycling by another industry may be considered "discarded"; the statutory definition does not preclude application of RCRA to such materials if they can reasonably be considered part of the waste disposal problem. *Am. Petroleum Inst. v. EPA*, 906 F.2d 729, 740–41 (D.C.Cir.1990); *Am. Mining Cong. v. EPA* ("AMC II"), 907 F.2d 1179, 1186–87 (D.C.Cir.1990). But we have never said that RCRA compels the conclusion that material destined for recycling in another industry is necessarily "discarded." Although ordinary language seems inconsistent with treating immediate reuse within an industry's ongoing industrial process as a "discard," *see AMC I*, 824 F.2d at 1185, the converse is not true. As firms have ample reasons to avoid complete vertical integration, *see generally* Ronald Coase, "The Nature of the Firm," 4 *Economica* 386 (1937), firm-to-firm transfers are hardly good indicia of a "discard" as the term is ordinarily understood.

*Id.* at 1268.

MCC submits that based on *Safe Food and Fertilizer,* merely because an industry other than the generating industry puts a byproduct to beneficial reuse, such as is present here, that does not automatically mean the byproduct is a solid waste under the RCRA.

The problem with the parties' arguments is that they rely on facts that go beyond the four corners of the Amended Complaint and raise factual issues that cannot be decided on a motion to dismiss. Notably, neither of the cases upon which the parties relied was decided on a motion to dismiss under Rule 12(b)(6). When the Court considers only the factual allegations contained in the Amended Complaint, as it must in ruling on a Rule 12(b)(6) motion, the Court finds that the allegations are sufficient to show a plausible ISE citizen suit claim under the RCRA, in that the allegations show or at least raise questions of fact as to whether the coal ash and coal refuse are discarded materials under the RCRA definition of solid waste.

Here, the factual allegations in the Amended Complaint suggest that MCC's handling, treatment and disposal of the coal ash falls within the plain meaning of "discarded." In particular, the Amended Complaint describes the LaBelle Refuse Site as "a historic mine dump" (¶2), "consist[ing] of an abandoned refuse pile made up of about 40 million tons of waste, two coal slurry ponds, and millions of cubic yards of coal combustion waste (coal ash) piled tens of feet deep on top of the coal refuse" (¶3). Plaintiff alleges that 361.5 acres of the Site are affected by coal refuse disposal activities, that "MCC's operation uses coal ash waste from power plants to reclaim and fill the Refuse Site and treat the underlying coal refuse pile," and that "MCC is disposing of coal ash on top of these piles for the purpose of 'reclaiming the site." (Am. Compl., ¶¶6, 27.) Plaintiff further alleges that the Site "receives approximately 200,000 tons per year of coal ash from coal-fired power plants in southwest Pennsylvania." (*Id.* at ¶27.) In addition, Plaintiff avers that MCC is transporting, handling and disposing of coal ash wastes from two other power plants and is paid by the generator of the coal ash for this service. (*Id.* at ¶38.) Thus, one could plausibly conclude from these allegations that the owners of the power plants abandoned or gave up the coal ash to MCC for the purpose of hauling it away and

disposing of it on an abandoned refuse pile,[17] and actually paid MCC to do so. Thus, MCC's alleged actions vis a vis the coal ash and coal refuse pile appear to fall within the plain meaning of the term "discard."

Moreover, in a guidance memorandum, the EPA specifically included coal ash and coal refuse (the Bevill Amendment wastes) in its list of the types of solid waste that can be addressed under Section 7003 of the RCRA. Memorandum, Steven A. Herman, Ass't. Administrator, Office of Enforcement & Compliance Assurance, Subject: *Transmittal of Guidance on the Use of Section 7003 of RCRA* (Oct. 20, 1997) ("EPA Guidance Mem."), *available at* http://www2.epa.gov/enforcement/guidance-use-administrative-orders-under-rcra-section-7003. Given the similarities between RCRA §7003 and §7002(a)(1)(B), *see* discussion *supra* at 15-16, the Court finds that the EPA would likely treat coal ash and coal refuse as solid waste as well, for the purpose of bringing an ISE citizen suit under §7002(a)(1)(B).

MCC's argument goes one step further and suggests that when a solid waste, i.e., discarded material, is used beneficially, it ceases to be a solid waste.[18] However, this argument raises more questions than it answers, and requires consideration of facts not contained in the Amended Complaint. For example, it is not entirely clear how the coal ash is being used once

---

[17] *See United States v. ILCO,* 996 F.2d 1126, 1131 (11th Cir. 1993) (holding that although EPA regulations classified the lead plates from recycled automobile batteries, which were used to produce ingots, as discarded solid waste, *somebody* had discarded the battery in which the lead plates were found, and the fact that the battery was discarded did not change merely because a reclaimer had purchased or found value in the component parts of the battery). The court of appeals opined: "It is perfectly reasonable for EPA to assume Congress meant 'discarded once.' Were we to rule otherwise, waste such as these batteries would arguably be exempt from regulation under RCRA merely because they are potentially recyclable. Previously discarded solid waste, although it may at some point be recycled, nonetheless remains solid waste." *Id.* at 1132 (citations omitted).

[18] *See* Note 15, *supra*.

delivered to the Site—whether it is being added to the coal refuse pile in an unadulterated state from that received from the power companies or whether it is being altered and or encapsulated in some way in order to "treat" the refuse pile. Nor is it clear whether that use is one that is deemed "beneficial" under RCRA standards, and if it is so recognized, whether that status mandates the conclusion that the coal ash is no longer discarded material and therefore not solid waste under the statutory definition.[19] The answers to these questions involve factual determinations that can only be made on a fully developed record.

It is plausible, and indeed, Plaintiff alleges in its Amended Complaint, that twenty-six individuals who reside within one mile of the LaBelle Refuse Site, as well as the adjoining land, air, and water sources, have suffered imminent and substantial harm as a result of MCC's handling, treatment, and disposal of coal ash, *despite its certification for beneficial use by the PA DEP*. Therefore the mere fact that PA DEP has certified MCC's beneficial use of coal ash does not appear to be dispositive of whether coal ash is a solid waste under the RCRA.

With regard to coal refuse, the Court notes that MCC, in its opening brief, appears to concede that coal refuse is an RCRA solid waste (*see* MCC's Br. at 12, ECF No. 29), but attempts to get around this fact by arguing that Pennsylvania has exclusive jurisdiction to enforce federal SMCRA under its federally-approved program, and coal refuse is governed exclusively by PA DEP's regulatory program. That argument might pass muster if CCC was bringing a citizen suit under Section 6972(a)(1)(A) for a violation of PA DEP's regulatory program or a permit thereunder, but has no merit here where the citizen suit is brought under Section 6972(a)(1)(B) based on imminent and substantial endangerment to the health of citizens and the

---

[19] *See* Circuit Judge Paez's dissent in *Safe Air,* 373 F.3d at 1049, opining that neither the extra-circuit cases nor the RCRA itself supported the majority's conclusion that mere beneficial reuse means that a substance has not been discarded under the RCRA.

environment in Luzerne Township allegedly caused by MCC's treatment of the coal refuse pile. As explained above, the right to bring an ISE citizen suit under the RCRA is independent of MCC's compliance or non-compliance with any Pennsylvania regulations or permits. Moreover, the Amended Complaint sufficiently alleges facts which show that the coal refuse pile was abandoned, and thus, is discarded material. *See, e.g.,* Am. Compl., ¶¶3, 27. Therefore, the Court finds that the Amended Complaint alleges a plausible RCRA ISE citizen suit claim under 42 U.S.C. §6972(a)(1)(B) with regard to MCC's alleged treatment of the coal refuse on the LaBelle Site.

## IV.  CONCLUSION

For the reasons articulated above, the Court finds that the Amended Complaint alleges sufficient facts to show that Plaintiff has asserted a plausible claim under ISE citizen suit provision of the RCRA, 42 U.S.C. §6972(a)(1)(B), to withstand MCC's motion to dismiss under Rule 12(b)(6). An appropriate order will follow.

Dated: September 30, 2014                                    BY THE COURT:


                                                   __s/Lisa Pupo Lenihan_____
                                                   LISA PUPO LENIHAN
                                                   Chief U.S. Magistrate Judge


cc:     All Counsel of Record
        *Via Electronic Mail*